IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHN A. GRIMES #01964464 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv406 |
| DIRECTOR, TDCJ-CID, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff John A. Grimes, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Plaintiff's Allegations and Procedural History**

Plaintiff filed his original complaint on August 11, 2023. (Dkt. #1.) On August 17, 2023, the Court determined that the original complaint was deficient in several respects and ordered Plaintiff to file an amended complaint. (Dkt. #4.) The Court specifically observed that the original complaint "goes on at length about his religious beliefs, but he does not mention the Defendants in the body of his complaint or say specifically what they have done to violate those beliefs or when." (*Id.* at 2.) The Court explained that Plaintiff "must state when, where, how, and by whom his rights have been violated and how he has been harmed by such violations. He must also assert a specific, cognizable demand for relief." (*Id.*)

Plaintiff filed his amended complaint on September 1, 2023. (Dkt. #7.) This pleading focused primarily on alleged violations of Plaintiff's religious rights. However, it included a claim

that Plaintiff is housed under conditions that expose him to extreme levels of heat that are causing him injury and pose a threat of serious harm. On October 17, 2023, the Court severed that claim into a new lawsuit for further development. (Dkt. #16.)

Before the Court could complete a screening of what remained of Plaintiff's first amended complaint, Plaintiff filed multiple supplements to his amended complaint, which the Court construed to seek leave to amend. (Dkt. ##21–23.) On November 8, 2023, the Court granted Plaintiff leave to file a second amended complaint (Dkt. #24), which Plaintiff did on November 22, 2023. (Dkt. #26.) This pleading again focused primarily on Plaintiff's religious rights, but it included an unrelated claim against a new defendant for excessive force in violation of the Eighth Amendment, which the Court severed into a new action on November 28, 2023. (Dkt. #28.) Only Plaintiff's claims concerning his religious liberties and a violation of his right to due process remain pending in this action. (*Id.*)

Plaintiff begins by asserting that he is a "child of God" and "no longer a slave-inmate." (Dkt. #26 at 5.) He alleges that he is a saint and a "new creation," forgiven and freed from all his sins. (*Id.*) He says that he has been "declared free of guilt by God." (*Id.*) Accordingly, he asserts:

> I believe and understand my mind is deceived whenever Man made law or policy is being read pressuring me to not understand the Truth.
>
> I am chosen in Christ . . . that I be holy and blameless before my Father.
>
> I decree it is ordered that [my] liberty is to granted ordered [sic] as soon as practicable, free my body, it is ordered, let it be on Earth as it is ordered in Heaven.
> . . .
> I renounce and reject all beliefs in everything conflicting with my God's word.

(*Id.* at 6 (citations omitted).)

Plaintiff alleges that the fact of his "incarceration and application to plaintiff of agency rules" prevent him from practicing his faith by "caring for orphans and [his] mother/widows in

their distress, at liberty," "walking with God freely," "serving [his] mother and family," and "going into [his] closet closing the door and praying . . . in secret/private." (Dkt. #26 at 7.) He asserts that these acts of faith are "prohibited by incarceration." (*Id.*) He repeatedly references the need to practice his religion "at liberty" and says that his religious practice is "prohibited by incarceration." (*Id.* at 8.)

For example, Plaintiff's incarceration prevents him from being able to "share in the divine nature and <u>escape</u> the world's corruption," denies him "access to [his] True places of worship built by [his] God . . . at liberty," prevents him from obeying God's instruction to "stand up, pick up your mat and go home," and forces him to "burn with passion" due to lack of sexual relations sanctioned by the Bible. (*Id.* at 8–9.) He specifically references the TDCJ's prohibition against escape as contrary to these religious practices. (*Id.* at 9.)

Plaintiff complains of not being able to take communion of wine and bread with his mother and asserts that "[w]orshipping God by walking with God in Spirit and in Truth which according to [his] understanding is impossible to do incarcerated where [his] God's Son Sacrifice for all [his] sins is not honored by [his] prison experience." (Dkt. #26 at 10.) The gist of his claims may be best summarized by the following portion of his second amended complaint:

> My private faith and worship practice of Honoring God with my body is prohibited by incarceration, based on man made ideas of law and TDCJ policy that conflict with my sincere belief in God's law that set me Free[.] I believe I can not fully Honor my Lord's God Son Jesus Christ Sacrifice for all my sins and setting me free from sin and their penalty by me remaining incarcerated violating my belief in my God's commands to stand in the Liberty Christ died for me to have[.] I believe I am free (my practice believing in) regardless of all worldly beliefs in applied adopted policy, as opposed to my beliefs in Christ's redeeming work finished on the cross and this is one of my Faith practices which is prohibited and burdened by TDCJ adopted policy requiring me to "understand and abide by policy rules" and subjecting my Faith and worship practices to behavior modifying techniques of disciplinary rules and procedures policy applied, and holding my Faith and worship practice under threat of Sanctions/Level I Offense 1.0—Escape . . . .

(*Id.* at 8 (citations omitted).)

Plaintiff further alleges that the Texas Board of Pardons and Paroles violates his religious liberties by adhering to its own rules rather than Plaintiff's "Justification by Faith" in denying him "any opportunity to exercise [his] God's gift of [his] new Life of Liberty in Christ." (*Id.* at 11.) Finally, he alleges that his counsel substitute refused to let him attend a disciplinary hearing for an unspecified offense after he indicated that wanted to enter the Bible as evidence, which resulted in his being subjected to custody restrictions for six months in violation of his right to due process. (*Id.* at 12.)

Plaintiff sues TDCJ Director Brian Collier, the Texas Board of Pardons and Paroles, and Counsel Substitute S. Holomon.[1] (Dkt. #26 at 3.) As relief, he seeks: "grant injunction and privilege to exercise freely my private faith and worship practices; grant preliminary injunction for my private faith and worship practices be non prohibited any longer," and unspecified "nominal and punitive damages" from Counsel Substitute Holomon. (*Id.*)

**II. Legal Standards and Preliminary Screening**

Because Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding as a pauper, his pleading is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Both statutes provide for *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state

---

[1] Plaintiff also sued Officer Loppolt for alleged excessive force, which was severed into another case. (*See* Dkt. #28.) Other defendants named in previous pleadings were also severed (*see* Dkt. #16) and/or simply omitted from the second amended complaint. Each of these defendants should be dismissed from the current action.

4

a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather,

the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.* Particularly with regard to any claim that defendants have conspired to harm him, a plaintiff must plead specific, non-conclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (plaintiffs asserting conspiracy claims under Section 1983 must plead the operative facts on which their claim is based; bald allegations that a conspiracy existed are insufficient).

### III. Discussion and Analysis

#### A. First Amendment

Plaintiff alleges that the very fact of his imprisonment conflicts with his religious belief that he is forgiven and "free" and prevents him from exercising his religion in specific ways that must necessarily occur outside the prison setting. This does not state a claim for violation of his right to free exercise of his religion under the First Amendment. First Amendment free exercise protections require the government to refrain from interfering with the religious beliefs and

practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "The government does not impermissibly regulate religious belief, however, when it promulgates a neutral, generally applicable law or rule that happens to result in an incidental burden on the free exercise of a particular religious practice or belief." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 135 (5th Cir. 2009) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)).

Moreover, a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, a government regulation may lawfully interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). The burden is not on the state to prove the validity of the challenged prison regulation under *Turner* but instead is on the inmate to disprove it. *Overton v. Bazzetta*, 539 U.S. 126 (2003).

In order to balance federal constitutional guarantees with the legitimate concerns of prison administrators, *Turner* requires a court to determine: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights at low costs to valid penological interests. *Turner*, 482 U.S. at 89–91. No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 80 (5th Cir. 1992). Where a regulation restricts First Amendment rights in a

neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. App'x 923, 932-32 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). Prison officials are afforded great deference in carrying out their complex duties. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

In this case, the forms of religious exercise on which Plaintiff relies are inherently inconsistent with his status as a prisoner. Plaintiff's right to "walk freely" for any reason is necessarily curtailed by his lawful incarceration pursuant to a thirty-five year sentence imposed in 2014 in Smith County, Texas for murder. *See* Inmate Information Details, available at https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=08415390 (last visited Dec. 15, 2023). While Plaintiff retains a constitutional right to believe and practice his religion to some degree, that right must yield to the state's religion-neutral and legitimate penological interest in requiring him to serve the prison term for which he was lawfully sentenced for his crime. Plaintiff does not allege that he is unable to practice his faith in prison in other ways, such as individual prayer, Bible-study, or worship services. And he does not allege that there is any way to accommodate his preferred religious practices, short of releasing him from prison.

In addition to his incarceration itself, Plaintiff also objects to being subjected to "man made" rules, including the TDCJ rule against escape and the Board of Pardons and Paroles' rules governing their proceedings. But there can be no doubt that the state has a legitimate interest in preventing prison escapes and managing the criteria and procedures through which prisoners seek pardons or paroles. Plaintiff's claim that he should be released or allowed to escape without consequence as a matter of religious faith is so lacking in merit that it is frivolous.

B.  RLUIPA

Plaintiff does not expressly allege that Defendants have violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.*, but he would fail to state a claim even if he did. RLUIPA provides in pertinent part as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

*See Brown v. Collier*, 929 F.3d 218, 228–29 (5th Cir. 2019); 42 U.S.C. § 2000cc-1(a). The Fifth Circuit has explained the framework for a Court's analysis of a RLUIPA claim:

> Initially, "it falls to the plaintiff to demonstrate that the government practice complained of imposes a 'substantial burden' on his religious exercise." To demonstrate a substantial burden, "the plaintiff must show that the challenged action 'truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.'" If the inmate makes this showing, the burden shifts to the government "to show that its action or policy is the least restrictive means of furthering a compelling interest." In making this assessment, we must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." However, the Supreme Court has made clear that even when prison regulations are at issue, "RLUIPA requires [courts] to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context."

*Brown*, 929 F.3d at 229 (citations omitted).

Despite RLUIPA's higher level of scrutiny on restrictions of an inmate's ability to practice his religion, Plaintiff's claim fails for the same reasons: the state clearly has a compelling interest in enforcing its criminal laws and incarcerating convicted murderers, *see Frazier v. Jordan*, 457 F.2d 726, 730 (5th Cir. 1972) (recognizing "state's compelling interests in effective punishment

and deterrence of crime"); *Kean v. Clark*, 56 F. Supp. 2d 719, 731 (S.D. Miss. 1999) (observing that "the State has a compelling interest in enforcing its criminal statutes"), and nothing short of total freedom would satisfy Plaintiff's particular religious demands. Accordingly, even when analyzed under the RLUIPA, Plaintiff's allegations fail to state a claim and are legally frivolous.

### C. Due Process

Finally, Plaintiff does not allege any facts that would establish a violation of his right to Due Process under the Fourteenth Amendment. As an initial matter, the Defendant to this claim—Plaintiff's counsel substitute at a prison disciplinary hearing—was not acting under color of state law in his representation of Plaintiff, and therefore not subject to suit under Section 1983. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (affirming dismissal because "the actions of counsel substitute in a prison disciplinary hearing are not actions under the color of state law").

But even if Plaintiff had named a proper defendant to his due process claim, prisoners only have a Fourteenth Amendment right to procedural due process before the imposition of restrictions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff does not identify any such hardship arising from his disciplinary conviction. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger due process protections. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Nor are the imposition of commissary, recreation, and cell restrictions. *See Antone v. Preschel*, 347 F. App'x 45, 46 (5th Cir. 2009) (unpublished); *Gaona v. Erwin*, 224 F. App'x 327, 328 (5th Cir. 2007); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("We agree that Madison's 30[-]day commissary and cell restrictions as punishment are in fact merely changes in the conditions of confinement and do not implicate due process concerns."). And an inmate also does not have a protected liberty interest in his custodial classification. *See Wilson v. Budney*, 976 F.2d 957, 958

(5th Cir. 1992); *Espinoza v. Benoit*, 108 F. App'x 869, 871 (5th Cir. 2004) (finding that close custody confinement "does not constitute an 'atypical and significant hardship … in relation to the ordinary incidents of prison life.'") (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Accordingly, even if the more restrictive custody level to which Plaintiff was moved upon his conviction involves these restrictions, it does not present the denial of a constitutional right.

Under certain circumstances, the loss of accrued sentence credits could inflict punishment imposing an atypical and significant hardship upon an inmate—because the loss of such time could result in the denial of a liberty interest in early release from prison. This is true where an inmate is eligible for release on mandatory supervision. *See Madison*, 104 F.3d at 768. Here, however, Plaintiff is not eligible for mandatory supervision due to his conviction for murder. *See* Tex. Gov't Code § 508.149(a)(2) (providing that defendants convicted of murder are not eligible for mandatory supervision). Accordingly, even a loss of sentence credits in this case would not implicate due process concerns. *See Stewart v. Cain*, 308 F. App'x 748, 750 (5th Cir. 2009) (unpublished) ("Because Stewart is ineligible for early release under the Texas mandatory supervision scheme, he has no constitutionally protected interest in previously earned good-time credits."). Plaintiff's exclusion from his disciplinary hearing, therefore, did not constitute a violation of due process.

## IV. Conclusion

For the reasons set forth above, Plaintiff's second amended complaint is frivolous and fails to state a claim for which relief can be granted. Dismissal is appropriate where Plaintiff has already been given a chance to cure his deficiencies but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions"); *Garcia v. City of*

11

*Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

## RECOMMENDATION

Accordingly, the undersigned recommends that Plaintiff's lawsuit be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

The Clerk shall accept no further submissions from Plaintiff in this matter other than the objections referenced above.

So ORDERED and SIGNED this 26th day of December, 2023.

*K. Nicole Mitchell*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE